CITIZENS STATE BANK OF BENKELMAN, APPELLEE AND CROSS-APPELLEE, V. CLARENCE S. KRUTSINGER ET AL., APPELLANTS AND CROSS-APPELLEES: FRED R. WALKER ET AL., APPELLEES AND CROSS-APPELLANTS.

FILED FEBRUARY 18, 1926. No. 23702.

1. **Mortgages:** FORECLOSURE: PROOF OF INDEBTEDNESS. In a suit to foreclose a mortgage, the written instrument itself and the note thereby secured may be considered evidence of the amount of the mortgagor's indebtedness, where that issue is raised by the pleadings.

2. ———: INDEBTEDNESS: BURDEN OF PROOF OF CREDIT. In a suit to foreclose a mortgage, the burden is on mortgagor to prove

that he was entitled to a credit not given when the amount of his indebtedness was computed by mortgagees before the mortgage was executed, where that issue is raised by the pleadings.

3. **Bills and Notes:** INDORSERS. Where there is nothing on the back of a promissory note but the names of the payees, written with a pencil, it imports on its face their liability as indorsers, when sold and delivered to the purchaser.

4. —————: —————: PROOF. On an issue as to the liability of payees in a promissory note as indorsers, their indorsement in blank on the back of the note in the hands of a purchaser to whom it has been delivered is evidence of such liability.

5. —————: COLLATERAL: BURDEN OF PROOF. Where payees in a promissory note indorse their names in blank on the back of it and deliver it to a purchaser, the burden is on them to prove that the indorsement was made with a pencil for the sole purpose of making the note available as collateral security, if that issue is raised by the pleadings in an action to foreclose a mortgage securing the note.

APPEAL from the district court for Dundy county: CHARLES E. ELDRED, JUDGE. *Affirmed.*

*Butler & James* and *R. D. Druliner,* for appellants.

*Stewart, Perry & Stewart* and *Robert Van Pelt,* for cross-appellants.

*Harry S. Dungan, Hines & Hines, Scott & Scott* and *Pemberton & O'Keefe, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

ROSE, J.

This is a suit to foreclose a mortgage given to secure a note for $31,900, dated October 30, 1920, due one year hence, payable to Charles R. Walker and Fred R. Walker and by them assigned to the Citizens State Bank of Benkelman, plaintiff — a bank of which the former was president and the latter cashier. The mortgagors were Clarence S. Krutsinger and Grace Krutsinger, two of the defendants. Their defense, partial only, was that the note and the mortgage for $31,900 exceeded their indebtedness to the ex-

tent of $894.90. Upon a trial of the cause, the district court decreed a foreclosure for the full amount of the mortgage. Mortgagors have appealed.

Was the indebtedness incorrectly stated in the written instruments? The mortgage was given to combine and secure a number of pre-existing debts incurred during a period of several years. It is contended that the item in question, $894.90, was erroneously considered a debt when the computation of the entire amount due was made October 30, 1920. In support of this proposition it is argued that plaintiff, the bank, three days before, debited the checking account of Clarence S. Krutsinger $894.90 to pay a note of his and afterward included the amount thereof in the estimate of the total indebtedness without any corresponding credit in any form for the payment thus made. Clarence S. Krutsinger so testified and the bank books show the debit mentioned. This partial defense, however, is not conclusively established, a point argued by mortgagors. It does not disprove a total based on unpaid notes and on other debts owing to the bank or to one or both of the Walkers who were at the time its managing officers. The total indebtedness was computed in a room in the rear of the bank by one of its officers and a third person, both of whom testified as witnesses. It is inferable from their testimony that unpaid debts only were considered, and that the total amount due on all the items was a little in excess of $31,900. One or the other of the mortgagors was present at times when the computations were being made and while the descriptions of the mortgaged land, aggregating several thousand acres, were being verified. They made no objection to the amount of the note and the mortgage before they were sued. Those instruments were themselves evidence of the amount of the indebtdness. The question is one of fact. It is difficult to solve owing to unsatisfactory proofs on both sides of the issue. The note and the mortgage were duly executed, delivered and subsequently transferred as correct in amount, and the debt, whatever it is, remains unpaid. The burden was on mortgagors to prove

the omitted credit pleaded by them.   The transactions were of considerable magnitude, calling for the attention of the debtors.   Years elapsed without any effort to rectify the mistake, if made.   The principal debtor was a farmer, an extensive landowner, and a man of affairs.   His memory failed him in regard to some of the facts about which he testified.   He does not seem to have adduced sufficient proof of his defense to impeach the amount of the indebtedness evidenced by the instruments deliberately executed by him. That part of the judgment from which mortgagors appealed is therefore affirmed.

The record presents another controversy.   The Walkers were also defendants.   They were sued to enforce a liability as indorsers of the note for $31,900, already described. They were payees, and on the back of the note there was nothing but their names written with a pencil.   They denied liability as indorsers, explaining that their names appeared on the back of the note for the sole purpose of making it available to the Broadway Bank of Denver as collateral security for obligations subsequently paid.   On the controverted issue, raised, as it was, by a reply to the facts constituting a defense, the trial court held them liable to plaintiff as indorsers, and from the judgment against them they have appealed.

Are the Walkers liable to plaintiff as indorsers?  The note was correctly dated October 30, 1920.   The date of the pencil indorsement was not definitely known, but the recollection of the Walkers was that it was made in January or February, 1921.   A duly acknowledged assignment of the mortgage itself by the Walkers to plaintiff, containing the words "without recourse," was executed and delivered December 1, 1921.   The record contains a copy of another duly acknowledged instrument dated October 20, 1922, showing that the Walkers sold a controlling interest in the Citizens State Bank of Benkelman, February 21, 1921, and admitting to the purchasers their liability as "indorsers or guarantors" of the note for $31,900, an asset of the bank. In their defense the Walkers take the position that their

pencil indorsement was limited to the sole purpose of making the note available as collateral security; that their liability ended with the payment of the collateral obligations; that the indorsement was explainable by parol; that there was never any delivery which carried with it the indorsement on the note; that there was no consideration for the indorsement; that the subsequent guaranty of payment to third persons was not provable in this action; that the admission of the guaranty was erroneous, and that consequently the judgment was contrary to law and without support in the evidence. In this connection reference is made to oral testimony by the Walkers in support of the defense outlined and to the formal assignment of the mortgage "without recourse." Reference is also made to a letter written by an officer of the Broadway Bank of Denver to Fred R. Walker, inclosing the note for $31,900 and containing the statement that the writer knew the note belonged to the Walkers personally.

The burden was on the Walkers to prove what they pleaded as a defense. Their propositions of fact and law fail, if a preponderance of the evidence shows that the note on its face and back was what it purported to be — a commercial paper with the names of the payees on the back and nothing more. The note itself, thus indorsed, was evidence of the liability of the indorsers. They gave it currency as such while it was in their own hands. This occurred when they were at liberty, with a knowledge of banking, to limit their liability by express words or by other means, if that was their intention. To secure obligations of plaintiff, the bank, they pledged the note to the Broadway Bank of Denver with the indorsement unrestricted. Before it was returned they listed it as an asset of plaintiff, the bank, without anything tangible to indicate a limitation of their liability as indorsers. When they transferred the note from themselves as individuals to the bank controlled by themselves as officers, they accepted for the bank an excessive loan forbidden by a statute imposing penalties. Their individual and banking transactions were

so related and intermingled as to weaken the incentive to avoid personal liability as indorsers of their own or the bank's paper. The indorsement, if what it purported to be, was in no wise affected by the words "without recourse," printed, as they were in the body of the subsequent assignment of the mortgage. The statement by the Denver banker in his letter that he knew the note belonged to the Walkers was a gratuitous communication which did not affect the rights of plaintiff, the note having been previously listed by the Walkers as an asset of their bank. Upon payment of the collateral obligations, the Denver bank held the pledged note for plaintiff, and there was at least a constructive delivery of the indorsement, treating it as a commercial one. The Walkers sold their bank and the sale included the note as an asset. In surrendering the note upon the release of the pledge, the Denver banker mailed it in an envelope addressed to Fred R. Walker, who had been replaced as cashier, but the letter was delivered to plaintiff. This incident did not change the character of the indorsement or prejudice the legal rights of the owner of the paper. The more logical view of the evidence, as a whole, results in the conclusion that the Walkers are liable as indorsers.

AFFIRMED.